**\*FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| NEW JERSEY CONSERVATION FOUNDATION, | : | |
| | : | |
| Plaintiff, | : | Civ. Action No. 17-11991(FLW) |
| | : | |
| v. | : | |
| | : | |
| FEDERAL ENERGY REGULATORY COMMISSION, *et al.*, | : | **OPINION** |
| | : | |
| Defendants. | : | |

**WOLFSON, United States District Judge**:

In January 2018, defendant Federal Energy Regulatory Commission ("FERC" or "Commission"), issued an order granting third-party PennEast Pipeline Company, LLC ("PennEast") the right to construct and operate an interstate natural gas pipeline.  Several parties to that agency proceeding, including Plaintiff New Jersey Conservation Foundation ("NJCF" or "Plaintiff"), have sought rehearing before the agency.  While those requests were pending, NJCF brings this separate matter challenging FERC's purported ongoing pattern and practice of issuing certificates in violation of the Fifth Amendment of the United States Constitution.[1]  In the present matter, Defendants move to dismiss

---

[1]     In addition to FERC, Plaintiff also names the following as defendants: Neil Chatterjee, Cheryl Lafleur and Robert Powelson.  These individual defendants are sued in their official capacity as Commissioners of FERC.  I will collectively refer to FERC and these individuals as "Defendants."

for lack of subject matter jurisdiction, arguing, *inter alia*, that FERC's authorizing statute, *i.e.*, the Natural Gas Act (the "NGA"), vests the courts of appeals with exclusive jurisdiction to hear the type of claims asserted by Plaintiff in this case.  For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

**BACKGROUND and PROCEDURAL HISTORY**

**I.      Statutory and Regulatory Background**

FERC is an "independent regulatory commission comprising up to five members appointed by the President, with advice and consent of the U.S. Senate." Department of Energy Organization Act, 42 U.S.C. § 7171(a)-(b). Commissioners may serve up to five-year terms, and no more than three members of the Commission may be members of the same political party. § 7171(b)(1). Each member has one vote and actions are determined by majority vote. As a governmental agency, FERC is relegated with the authority to regulate the interstate transmission and wholesale sale of electricity and natural gas, and licenses the construction and operation of hydropower projects, natural gas pipelines, and the projects' infrastructure.

The NGA, 15 U.S.C. § 717, *et seq.*, confers on the Commission "exclusive jurisdiction" over the "transportation and sale of natural gas in interstate commerce." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300-301 (1988) (the NGA is a "comprehensive scheme of federal regulation"); *see Del. Riverkeeper Network v. FERC,* 243 F.Supp.3d 141, 144 (D.D.C. 2017). Section 7 of the Act governs the process for obtaining a certificate authorizing the construction,

extension, or abandonment of natural gas pipeline facilities. *See* 15 U.S.C. § 717f; *Del. Riverkeeper*, 243 F. Supp.3d at 144–45 (describing FERC certification process); *Myersville Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301, 1307–08 (D.C. Cir. 2015). The Commission may issue a certificate only if it finds that the proposed project "is or will be required by the present or future public convenience and necessity," and may attach to the certificate "such reasonable terms and conditions as the public convenience and necessity may require." 15 U.S.C. § 717f(e). The NGA also permits any person aggrieved by a FERC order to seek rehearing before the Commission within thirty days after the order's issuance. 15 U.S.C. § 717r(a). After FERC issues a rehearing order, a party aggrieved by that particular order may seek judicial review in the appropriate court of appeals. 15 U.S.C. § 717r(b). Importantly, the Act vests jurisdiction in the U.S. Courts of Appeals to review final FERC orders and all matters inhering in a pipeline certificate. *Id.*

## II.    PennEast Pipeline Certificate[2]

In September 2015, PennEast submitted an application pursuant to the NGA, 15 U.S.C. § 717f(c), to construct and operate an interstate natural gas pipeline extending from Pennsylvania to New Jersey. Numerous parties, including Plaintiff, intervened in that FERC proceeding, in addition to submitting

---

[2]     While the Complaint does not allege detailed facts regarding the PennEast application, Plaintiff refers to PennEast's proceedings before FERC as the basis for its claims.  For the purposes of completeness and clarity, I will set forth some details of the application process.   These undisputed facts are derived from public records. To be sure, I do not, and need not, however, rely on these facts in resolving Defendants' Rule 12(b)(1) motion.

comments on the application to FERC. Upon filing PennEast's application, FERC's Office of Energy Projects (the "Office") initiated an environmental review process in accordance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, to study the potential impact of the proposed pipeline. In that regard, the Office concluded that the proposed pipeline would result in some adverse effects, but they would be reduced to "less than significant levels" with the implementation of certain mitigation measures. *See* Final Environmental Impact Statement at ES-18. These proposed mitigation measures were recommended as conditions to any final authorization by FERC.

On January 19, 2018, FERC issued its Certificate Order of "public convenience and necessity," with one Commissioner dissenting, adopting the Office's findings. Consequently, FERC granted a Certificate to PennEast, subject to compliance with environmental and operating conditions. Thereafter, numerous parties, including Plaintiff, filed requests for agency rehearing. Plaintiff also moved to stay the Certificate Order.

Following the application for rehearing, FERC has the "power to grant or deny rehearing or to abrogate or modify its order without further hearing" within 30 days; otherwise the request is considered denied. 15 U.S.C. § 717r(a). On February 22, 2018, the Commission's Deputy Secretary issued a tolling order, granting rehearing for the limited purpose of affording the Commission time to consider the rehearing requests. During the pendency of the instant motion, the Commission issued a final order denying rehearing in the PennEast pipeline proceeding. Thereafter, Plaintiff, along with other third-parties, filed a petition

for review of the Commission's PennEast orders pursuant to the NGA in the U.S. Court of Appeals for the D.C. Circuit.[3]

### C. Plaintiff's Complaint

NJCF is a 501(c)(3) not-for-profit organization headquartered in Far Hills, New Jersey.  Compl., ¶ 13.  The purpose of the organization is preserving New Jersey's land and natural resources.  *Id.*  In that endeavor, NJCF owns over 20,000 acres of land preserved for the benefit of the public and the environment. *Id.*  Indeed, NJCF owns property in Hunterdon County along the proposed route of the PennEast pipeline.  *Id.* at ¶ 14.  NJCF's land is subject to eminent domain proceedings under the Certificate at issue.  *Id.* Plaintiff alleges that the pipeline will impact NJCF's property by interfering with NJCF's ownership of, access to, and normal use of its private lands.  *Id.* at ¶ 15.  NJCF further alleges that it will suffer economic harm if the public, members, and potential members cannot use the land as originally intended.  *Id.*

In the Complaint, Plaintiff asserts three causes of action: (1) FERC's issuance of certificates that delegate the power of eminent domain in the absence of adequate public use analyses violates the Takings Clause of the Fifth Amendment; (2) FERC's practice of granting eminent domain prior to receiving environmental impact findings from regulatory agencies charged with making

---

[3]      Because Plaintiff has appealed FERC's Certification at issue, I question whether having parallel actions in this Court and the court of appeals would render this case moot, or whether I should abstain from hearing Plaintiff's claims. However, because the parties have not argued that this case is mooted by FERC's issuance of a final order, and because I find that subject matter jurisdiction is lacking, *see infra*, I need not reach this issue.

them violates the Fifth Amendment; and (3) FERC's practice of issuing a certificate conditioned on subsequent state or federal authorizations that may require changes to the pipeline route or prevent construction also violates the Takings Clause.  In that regard, Plaintiff seeks a judgment and order declaring FERC's pattern and practices unconstitutional. Significantly, in its Complaint, Plaintiff painstakingly characterizes its claims as constitutional in nature, and that it is raising an issue of first impression — whether a conditional certificate, issued by FERC, that is not sufficient to authorize pipeline construction may constitutionally permit a private company to condemn land for a pipeline that may never be built.

In the instant matter, Defendants move to dismiss the Complaint for lack of subject matter jurisdiction.  They argue that because the NGA vests the appropriate court of appeals — in this case, the Third Circuit or the D.C. Circuit — with exclusive jurisdiction to hear matters inhering in a pipeline certificate proceeding, this Court lacks jurisdiction to hear Plaintiff's claims.[4]

**DISCUSSION**

I. **Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). When jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. *See Kehr Packages,*

---

[4]   Defendants also argue that the Complaint should dismissed for Plaintiff's failure to exhaust administrative remedies.  Because I find that this Court lacks subject matter jurisdiction, I do not address this argument.

*Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Rudolph v. Adamar of N.J., Inc.*, 153 F.Supp.2d 528, 533 (D.N.J. 2001); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

In evaluating a Rule 12(b)(1) motion to dismiss, courts must determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject matter jurisdiction in fact, apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In a case where a defendant presents a factual attack, the court may consider evidence outside the pleadings. *See Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997); *Mortensen*, 549 F.2d at 891–92. When a defendant attacks subject matter jurisdiction "in fact," it disputes the existence of certain jurisdictional facts alleged by the plaintiff. *See Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000). In such a situation, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. Additionally, the burden of proving the existence of subject matter jurisdiction always lies with the plaintiff. *Id.*

Here, there is no dispute that Defendants mount a facial challenge to subject matter jurisdiction.

## II.   Jurisdiction under the NGA

Defendants argue that this Court lacks subject matter jurisdiction because the NGA vests exclusive jurisdiction in the appropriate courts of appeals

to hear the very type of claims raised by Plaintiff in this case.  First, Defendants characterize this suit as the latest in a series of recent district court challenges to the natural gas pipeline certificate process administered by FERC.  According to Defendants, the district courts that have addressed such recent challenges have concluded uniformly that they lack subject matter jurisdiction to hear such claims because, under section 19 of the Act, 15 U.S.C. § 717r, the courts of appeals have exclusive jurisdiction to review all matters inhering in natural gas pipelines certificate proceedings before FERC.

In response, Plaintiff contends that Section 717r does not apply here, since this matter challenges FERC's general pattern and practice of granting unconstitutional certificates.  According to Plaintiff, the NGA only provides that parties may obtain review of FERC orders in the court of appeals, but does not expressly limit the jurisdiction that other statutes confer on district courts, such as 28 U.S.C. § 1331.[5]  Rather, applying the framework set forth by the Supreme Court in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), Plaintiff argues that its claims are not precluded by the NGA, because they are 1) wholly collateral to the statute's review provisions; 2) outside FERC's expertise; and 3) preclusion would foreclose all meaningful judicial review.  *See id.* at 207–213.  I disagree with Plaintiff's position in this regard, since the weight of the authorities suggests otherwise.  Rather, I find that 1) the NGA explicitly precludes review of the constitutional claims raised in this case; and 2) even if the Court were to

---

[5]    28 U.S.C. § 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

8

apply the *Thunder Basin* framework, jurisdiction would remain lacking.  I turn next to those discussions.

As the Third Circuit has recently advised, "the NGA is a detailed statute, setting forth specific provisions on the procedure by which approval and subsequent review of a pipeline project may be attained."  *Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 194 (3d Cir. 2018).  The pertinent language from Section 19 of the NGA, 15 U.S.C. § 717r, provides that "[a]ny person ... aggrieved by an order issued by the Commission in a proceeding under this Act [15 USCS §717 *et seq.*] to which such person . . . is a party may apply for a rehearing within thirty days after the issuance of such order." § 717r(a). If, and only if, a party files for rehearing may the party obtain judicial review: "No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon." *Id.* Subsection (b) states that a party may obtain review of FERC's order "in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia . . . ." § 717r(b). The statute describes such a review as "exclusive," noting that "[u]pon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part." *Id.* It also requires exhaustion: "No objection to the order of the Commission shall be considered by the court unless such objection shall

have been urged before the Commission in the application for rehearing unless there is a reasonable ground for failure to do so." *Id.*

Indeed, the Third Circuit has recognized that the NGA's exclusive jurisdiction provision is broad in scope, such that the Act is "the exclusive remedy for matters relating to the construction of interstate natural gas pipelines. It forms the paradigm by which FERC operates in matters related to interstate natural gas pipelines." *Adorers*, 897 F.3d at 195.  In that regard, the court cautioned that a party may not bypass the NGA by suing the agency in federal district court under § 1331, because the statutory scheme is the specific method that Congress has provided for reviewing adverse FERC actions.  *Id.* at 197 (citing *Gen. Fin. Corp. v. F.T.C.*, 700 F.2d 366, 368 (7th Cir. 1983)).  Instead, the specific statutory method, if adequate, is exclusive.  *Id.*

Several sister circuits are in accord.  Like the Third Circuit, the Fourth Circuit has found that the NGA "vests exclusive jurisdiction to review all decisions of the Commission in the circuit court of appeals . . . ; there is no area of review, whether relating to final or preliminary orders, available in the district court. And this has been the uniform construction given the statute." *Consol. Gas Supply Corp. v. FERC*, 611 F.2d 951, 957 (4th Cir. 1979); *Berkley v. Mt. Valley Pipeline, LLC*, 896 F.3d 624, 628 (4th Cir. 2018).  Similarly, the Tenth Circuit has explained that the NGA's jurisdictional provision precludes litigation "between the parties of all issues inhering in the controversy, and all other modes of judicial review," noting that it "would be hard pressed to formulate a doctrine

with a more expansive scope." *Williams Nat. Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 261–62 (10th Cir. 1989).

As an example of the NGA's expansive scope, the Sixth Circuit affirmed the district court's dismissal for lack of jurisdiction under the NGA, where landowners sought to enjoin the building of a pipeline and recover tort damages for conversion; in so holding, the circuit court emphasized that "[e]xclusive means exclusive, and the NGA nowhere permits an aggrieved party otherwise to pursue collateral review of a FERC certificate in state court or federal district court." *Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 605 (6th Cir. 2010). Likewise, the First Circuit affirmed the district court's dismissal of claims, which challenged FERC's action in a licensure proceeding, for lack of subject matter jurisdiction by relying on the judicial review provision of the Federal Power Act ("FPA"). *Maine Council of Atlantic Salmon Federation v. National Marine Fisheries Service*, 858 F.3d 690 (1st Cir. 2017).[6] The court made clear that the FPA's jurisdictional provision,[7] which is materially identical to the

---

[6]    Plaintiff contends that there are significant and substantial differences between the judicial review provisions of the FPA and the NGA such that cases interpreting the FPA should not be used for comparison purposes. However, the Supreme Court has held that the judicial review provisions of the FPA and the NGA are "in all material respects substantially identical," and as such, courts routinely cite "interchangeably decisions interpreting the pertinent sections of the two statutes." *Ark. Law. Gas Co. v. Hall*, 453 U.S. 571, 577 n.7 (1981). And, indeed, the Third Circuit relied on *Maine Council* — a case interpreting the FPA — in reaching its conclusion regarding the jurisdictional scope of the NGA in *Adorers*. *See Adorers*, 897 F.3d at 197.

[7]    The FPA states in relevant part: "Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States court of appeals for any circuit

NGA's, is exclusive not only to review the terms of the specific FERC order, but over "*any* issue 'inhering in the controversy.'" *Id.* at 693(emphasis added) (citing *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958)(finding that the FPA's statutory review scheme "necessarily preclude[s] *de novo* litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review," and that challenges brought in the district court outside that scheme are therefore "impermissible collateral attacks")).

Defendants have also cited to a line of cases, in addition to those cited above, holding that district courts lack jurisdiction to review or modify FERC orders, even where the claims brought are not a direct challenge to a particular agency order.[8]  *See, e.g.*, *Urban v. FERC*, No. 17-1005, 2017 U.S. Dist. LEXIS 208445 (N.D. Ohio Aug. 7, 2017), *aff'd* 2017 U.S. Dist. LEXIS 208442 (N.D. Ohio, Dec. 19, 2017) (dismissing administrative challenges to FERC's review of pipeline certificate application); *Adorers of the Blood of Christ v. FERC*, 283 F. Supp. 3d 342 (E.D. Pa. 2017), *aff'd* 897 F.3d 187 (3d Cir. 2018) (dismissing organization's

---

wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part." 16 U.S.C. § 825l(b).

[8]    Defendants cite to *Berkley v. Mountain Valley Pipeline, LLC*, No. 17-357, 2017 U.S. Dist. LEXIS 202907 (W.D. Va. Dec. 11, 2017), *aff'd* 896 F.3d 624 (4th Cir. 2018), for the proposition that constitutional challenges to FERC actions are inhering in a FERC pipeline order.  However, because *Berkley* was decided exclusively on *Thunder Basin* grounds, *see Berkley*, 896 F.3d at 633 n.5, I will defer discussion of this decision until later in this Opinion where I address Plaintiff's arguments regarding that framework.

religious exercise challenge to FERC certificate order, noting "the law in this area is particularly well-settled," as the courts of appeals have jurisdiction over all matters inhering in natural gas pipeline certificate cases); *Lovelace v. United States*, No. 15-30131, 2016 U.S. Dist. LEXIS 192225 (D. Mass. Feb. 18, 2016) (dismissing Fifth Amendment constitutional challenge to the NGA's eminent domain provisions, because it is well-established that the Act forecloses judicial review of a FERC certificate in district court); *Town of Dedham v. FERC*, No. 15-12352, 2015 U.S. Dist. LEXIS 91994 (D. Mass. July 15, 2015) (finding a lack of subject matter jurisdiction to enjoin construction of pipeline pending FERC consideration of rehearing requests).

In *Urban*, plaintiffs were a group of property owners who alleged that they would be adversely affected by a natural gas pipeline that a gas company, Nexus, sought to build. During the pendency of the review process by FERC, the plaintiffs filed suit seeking injunctive relief, arguing that FERC should be enjoined from issuing a certificate under, *inter alia*, the Administrative Procedure Act. *Urban*, 2017 U.S. Dist. LEXIS 208445, at *3. The court, however, dismissed the administrative challenges to FERC's review of the pipeline certificate application, because it concluded that the NGA granted exclusive jurisdiction to the circuit courts. *Id.* at *10-11. In so holding, the court rejected plaintiffs' arguments that jurisdiction properly lies in the district court since the case was filed prior to FERC's issuance of a certificate and that § 717u independently

conferred jurisdiction.[9]  *Id.* The court reasoned that the special review provision of § 717r(b) establishes an exclusive scheme of review, and therefore, it was irrelevant that FERC had not issued a certificate; rather, any administrative challenges — although not directly challenging a FERC order — are subject to the exclusive jurisdiction of the court of appeals.  *Id.* at *12-13.

The plaintiffs in *Adorers* were religious order members who brought an action in the district court, challenging a FERC order authorizing defendant company to build a gas pipeline on plaintiffs' land.  *Adorers*, 897 F.3d at 190. The plaintiffs argued that FERC's condemnation order violated the Religious Freedom Restoration Act ("RFRA").  FERC sought to dismiss the action based on jurisdictional grounds pursuant to § 717r.  By granting the motion, the district

---

[9]     Section 717u states:

> The District Courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder… . Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder may be brought in any such district or in the district wherein the defendant is an inhabitant . . . .

15 U.S.C. § 717u.  I note that Plaintiff, here, does not premise its jurisdictional arguments on § 717u.  As such, I will not discuss in detail that section in this Opinion.  Suffice it to say, however, § 717u, in my view, vests jurisdiction in the district court over *enforcement* actions that arise under federal law.  *See Urban*, 2017 U.S. Dist. LEXIX 208445, at *23; *Dedham*, 2015 U.S. Dist. LEXIS 91994, at *4-5.  Indeed, to find otherwise would be inconsistent with the NGA's exclusive jurisdictional scheme.

court held that "RFRA did not allow the Adorers to circumvent the specific procedure prescribed by the NGA for challenging a FERC order." *Id.* at 192. The Third Circuit affirmed the decision in two respects. First, the court explained that RFRA does not grant the plaintiffs an independent statutory right to assert religious claims against FERC in district court, because the dispute at issue was subject to the exclusive purview of the NGA's provision for appellate review. Importantly, the court reasoned that the statutory scheme "forms the paradigm by which FERC operates in matters related to interstate natural gas pipelines. By failing to avail themselves of the protections thereunder, the Adorers have foreclosed judicial review of their substantive RFRA claims." *Id.* at 195. The Third Circuit also held that "even if the NGA did not expressly preclude jurisdiction . . . [the court] would nonetheless find that it did so implicitly under the two-step framework" provided in *Thunder Basin*.[10]

In *Lovelace*, the plaintiff's complaint alleged — similar to the allegations raised in this case — that a section of the NGA is unconstitutional because it permits condemning private property by eminent domain in a manner that does not serve the public use. *Lovelace*, 2016 U.S. dist. LEXIS 19225, at *1-2. Defendant moved to dismiss, *inter alia*, for lack of subject matter jurisdiction, arguing that the courts of appeals had exclusive jurisdiction to hear any constitutional claims regarding FERC's actions under the NGA. Accepting defendant's position, the court explained that "it is simply clear beyond dispute

---

[10]    I will address this aspect of the Third Circuit's decision in *Adorers, infra.*

that the district court has no role in litigation of this kind." *Id.* at *2. The court went on to express that the entire NGA statutory scheme would be "undermined if unhappy parties could come to district courts, seeking relief under the Fifth Amendment." *Id.* at *3.

The action in *Dedham* stemmed from defendant Algonquin Gas' plan to build a high-pressure pipeline through the Town of Dedham in Massachusetts. *Dedham*, 2015 U.S. Dist. LEXIS 91994, at *1. The Town sued for declaratory and injunctive relief, seeking to postpone the commencement of construction pending further proceedings before FERC. The court dismissed the action for lack of jurisdiction by finding that, as a district court, it lacked authority to enjoin construction of a pipeline because the courts of appeals are given exclusive jurisdiction to do so. *Id.* at *3.

Having reviewed these above-cited authorities, particularly the Third Circuit's recent pronouncement in *Adorers* on this very subject, I find that the law is indeed "well-settled" that the NGA's exclusivity provision has broad reach over challenges brought against FERC, including constitutional claims brought by Plaintiff in this case.   While I acknowledge Plaintiff's position is that by bringing suit, it does not seek to directly challenge a FERC order, but rather the constitutionality of FERC's actions through the lens of the Fifth Amendment, I nonetheless find that these claims fall within the exclusive jurisdiction of the appropriate court of appeals.   First, based on how expansively courts have interpreted § 717r, there is little doubt that Plaintiff's taking claims are inhering in the controversy before FERC related to the PennEast pipeline application and

the Certificate at issue.  Indeed, constitutional challenges to FERC's actions, or the NGA itself for that matter, have all been found to be subject to the jurisdictional provision of the NGA.  Tellingly, Plaintiff has not cited any authority to support its position that its claims asserted here are so unique that they should not be considered as an attack on FERC's Order.

Rather, despite Plaintiff's insistence, a reading of the Complaint suggests that Plaintiff's claims, if successful, would invalidate FERC's PennEast Order. As a constitutional matter, Plaintiff alleges at length how FERC's practice of issuing pipeline certificates, in Plaintiff's view, is unconstitutional.  *See* Compl., ¶¶ 49–56.  Specifically, Plaintiff claims that "Certificate[s] cannot constitutionally convey eminent domain authority *before* the pipeline project has received all necessary state and federal approvals, because those approvals may never be issued."  *Id.* at ¶ 11.  Although Plaintiff carefully couches its claims as constitutionally grounded, it nevertheless alleges specifically that PennEast's pipeline would impact NJCF's property by interfering with NJCF's ownership of, access to, and normal use of its private lands, and that the public, which uses NJCF's land would suffer harm if it cannot use the land as originally intended. *Id.* at ¶ 15.  Because of these harms, Plaintiff "seeks declaratory relief to protect its constitutional rights to secure its private property from a government-sanctioned land grab for private fiscal gain." *Id.* at ¶ 12.  Therefore, examining the allegations in *toto*, reveals that Plaintiff's constitutional claims — while attacking FERC's pattern and policy — actually seek to invalidate FERC's Certificate concerning the PennEast project.  In fact, Plaintiff alleges that it has

standing to bring suit because it would suffer economic injury from FERC's issuance of the Certificate, and that injury is precisely what Plaintiff seeks to remedy by bringing this litigation.  Plaintiff cannot have it both ways.  By seeking to invalidate the Certificate at issue, Plaintiff's claims would necessarily fall within the exclusive jurisdiction of the appropriate court of appeals pursuant to § 717r.

Accordingly, Plaintiff cannot escape the NGA's statutory scheme of review by circumventing the plain language of § 717r.  However, even if I were to apply the *Thunder Basin* framework as Plaintiff suggests, jurisdiction would remain lacking.

## II.   The *Thunder Basin* framework

Employing the *Thunder Basin* framework, Plaintiff maintains that the constitutional challenges raised here fall outside the scope of the NGA's broad exclusivity provision and thus, this Court has jurisdiction over its claims.  The *Thunder Basin* legal framework is used to determine whether Congress has *impliedly* precluded jurisdiction in the district courts "by creating a statutory scheme of administrative adjudication and delayed judicial review in a particular court." *Bennett v. U.S. Sec. & Exch. Comm'n*, 844 F.3d 174, 178 (4th Cir. 2016); *see Adorers*, 897 F.3d at 195; *Thunder Basin*, 510 U.S. at 207.  The analysis involves two steps.  At the first step, the court asks whether Congress' intent to preclude district-court jurisdiction is "fairly discernible in the statutory scheme," based on an examination of the statute's text, structure, and purpose.  *Adorers*, 897 F.3d at 195.  At the second step, the court inquires whether plaintiff's claims

"are of the type Congress intended to be reviewed within this statutory structure." *Id.* (quoting *Thunder Basin*, 510 U.S. at 212).   In doing so, three factors are considered, with the first being the most significant: (1) whether the statutory scheme "foreclose[s] all meaningful judicial review"; (2) the extent to which the plaintiff's claims are "wholly collateral" to the statute's review provision; and (3) whether "agency expertise could be brought to bear on the . . . questions presented." *Id.* (citations and quotations omitted).

In *Thunder Basin*, the Supreme Court considered a petitioner's pre-enforcement challenge to the Federal Mine Safety and Health Amendments Act of 1977, 30 U.S.C. § 801, *et seq.* ("Mine Act").   *Thunder Basin*, 510 U.S. at 202. Thunder Basin, a coal company, objected to a Mine Act regulation that required it to post the names of certain union representatives authorized under the statute to accompany the Secretary of Labor during physical inspections of mines. *See  id.* at 203–04 (citing 30 C.F.R. § 40.4). Rather than seek review of the regulation through the Mine Act's judicial-review scheme, Thunder Basin filed a lawsuit in federal district court alleging that requiring it to challenge the regulation through the statute's review scheme violated due process. *Id.* at 205.

The Supreme Court rejected Thunder Basin's argument by referring to the Mine Act's "detailed structure for reviewing violations of 'any mandatory health or safety standard, rule, order, or regulation promulgated' under the Act."  *Id.* at 207 (quoting 30 U.S.C. § 814(a)). Under the Mine Act, a mine operator can challenge an adverse agency order before an ALJ, subject to discretionary review by the Federal Mine Safety and Health Review Commission ("MSHRC"). *Id.* at

207–08; 30 U.S.C. § 823(d)(1). In that regard, a mine operator can petition the MSHRC to review the ALJ's decision, or the MSHRC can do so at its own initiative. *See* 30 U.S.C. § 823(d)(1), (2)(A)(i). If the mine operator remains dissatisfied with the MSHRC's decision, it can challenge that decision in the appropriate federal court of appeals, which exercises "exclusive" jurisdiction over such cases. *See* 30 U.S.C. §816(a)(1); *see also Thunder Basin*, 510 U.S. at 208.

In reviewing the statutory scheme, the Court noted the Mine Act expressly authorizes limited district-court jurisdiction over actions brought by the Secretary of Labor to enjoin habitual violations and coerce payment of civil penalties; by contrast, "[m]ine operators enjoy no corresponding right but are to complain to the Commission and then to the court of appeals." *Thunder Basin*, 510 U.S. at 209 (footnote omitted). Based on the "comprehensive review process," the Court found that congressional intent to preclude district-court jurisdiction over pre-enforcement claims was "fairly discernible." *Id.* at 208, 216. Moreover, the Court concluded that "petitioner's statutory and constitutional claims" — even a constitutional claim that challenged the legitimacy of the administrative process itself — could be "meaningfully addressed in the Court of Appeals." *Id.* at 215.

Here, Plaintiff challenges FERC's pattern and practice as violative of the Fifth Amendment in the following ways: (1) by conveying eminent domain authority to private parties while relying solely on the existence of precedent agreements to make a finding of public use; (2) by issuing a Certificate conditioned on subsequent state and federal authorizations that may require

changes to the pipeline route or prevent construction thereof; and (3) by granting eminent domain prior to receiving environmental impact findings from regulatory agencies charged with making them, which are a critical part of the public use analysis.   With respect to first *Thunder Basin* prong, Plaintiff argues that its claims are not the type intended to be shoehorned into review within the existing NGA statutory structure. Addressing the second prong at length, Plaintiff argues that all meaningful judicial review will be foreclosed without this Court's intervention; this action is wholly collateral to the NGA's review provisions; and the constitutionality of FERC's pattern and practice is outside the agency's expertise.   I will separately examine each factor below.

### A.      First Step: "Fairly Discernible"

In determining the "fairly discernible" requirement, guided by *Thunder Basin,* courts examine the text and structure of a particular statute to discern whether Congress intended to preclude collateral district-court challenges. *Adorers*, 897 F.3d at 195.   On this very question, the Third Circuit has definitively spoken: "Congress' intent to vest jurisdiction in circuit courts is 'fairly discernible in the' NGA."   *Id.*   The court, after analyzing the exclusive jurisdictional provision of the NGA, reasoned that "[o]nly 'the court of the appeals of the United States' . . . 'may affirm, modify or set aside [a FERC] order in whole or in part."   *Id.* (citing 15 U.S.C. § 717r(b)).   Here, just like the *Adorer* plaintiffs attempted to do by raising RFRA claims, by challenging the permissibility of the PennEast pipeline project under the Fifth Amendment, Plaintiff is seeking to

"modify or set aside" FERC's Order — "a matter the NGA places in the 'exclusive purview of the court of appeals . . . ." *Id.*

Moreover, in *Berkley*, the Fourth Circuit recently reconfirmed that the intent of Congress to vest jurisdiction in the appropriate court of appeals is "fairly discernible" from the NGA. In *Berkley*, plaintiffs were landowners along the path of a proposed natural gas pipeline. *Berkley*, 896 F.3d at 627. They brought an action in the district court against FERC and the pipeline company, challenging the constitutionality of various provisions of the NGA. Without reaching the merits of those challenges, the district court dismissed the action for lack of subject matter jurisdiction on the basis that their claims must instead be brought through the agency review process set forth in the NGA. *Id.* The Fourth Circuit subsequently affirmed the decision under the *Thunder Basin* framework. Relevant here, as to the "fairly discernible" requirement, the circuit court explained that the NGA "specifically allows for district court jurisdiction over certain actions, such as condemnation court jurisdiction, yet it chose not to do so when it came to issues related to review of a Certificate. Rather, in such situations, Congress gave 'exclusive' jurisdiction to the appropriate court of appeals—but only after going through the review process with FERC." *Id.* at 630. Importantly, the court held that "[n]othing in the Natural Gas Act indicates Congress intended to create exceptions to this exclusive jurisdiction of the courts of appeals, except those exceptions specifically set out in the statute." *Id.* As a matter of law, the court went on to hold that the NGA's "text and structure evince

22

an intent from Congress to remove district-court jurisdiction," even in cases where the constitutionality of the Act itself are challenged.  *Id.*

Consistent with *Adorers* and *Berkley*, I find that Congress's intent to preclude district-court jurisdiction under the NGA is fairly discernible. Despite Plaintiff's argument, the NGA, similar to the Mine Act at issue in *Thunder Basin*, creates an administrative review process and delegates exclusive judicial review to the appropriate court of appeals. This express language used by Congress evinces the Legislature's intent to preclude district-court jurisdiction over collateral challenges to FERC's orders, including the claims brought here.

### B. Second Step: "whether Plaintiff's claims are of the type Congress intended to be reviewed within the statutory structure"

Even if a statute's intent is fairly discernible, the Court must still consider three additional factors encompassed by the second step of the *Thunder Basin* framework: (1) whether the statutory scheme "foreclose[s] all meaningful judicial review"; (2) the extent to which the plaintiff's claims are "wholly collateral" to the statute's review provision; and (3) whether "agency expertise could be brought to bear on the . . . questions presented." *Thunder Basin*, 510 U.S. at 212–13. Courts balance these factors to determine whether a plaintiff's claims are of the type Congress intended to be reviewed within the statutory structure. Here, after analyzing those factors, I find that the NGA deprives this Court of jurisdiction over Plaintiff's constitutional claims.

### 1.   Meaningful Judicial Review

Under the NGA, FERC has 30 days to grant or deny requests for rehearing of a particular certificate order.  According to the Plaintiff, since 2009, however, FERC has tolled its time to rule on requests for rehearing in 99% of its gas pipeline orders, with an average tolling period 194 days. And, during that tolling period, Plaintiff argues in a generally fashion, that the condemnation process continues and construction may potentially commence.[11]  As such, Plaintiff argues if it is unable to challenge the FERC's Certificate in federal court prior to construction or condemnation, it would amount to a practical denial of judicial review.  Based on the law in this area, I disagree.

As a general matter, if a statue prescribes a special review procedure, it is ordinarily presumed that Congress intended that procedure to be the exclusive means of obtaining judicial review.  *See Adorers*, 897 F.3d at 195.  In the context of the NGA, the Third Circuit has advised that this statute "does not foreclose all meaningful judicial review because it vests the courts of appeals with jurisdiction to review FERC orders."  *Id.*  The circuit court's conclusion was partly based upon the Supreme Court's holding in *Thunder Basin* that, "constitutional claims . . . [could] be meaningfully addressed in the Court of Appeals," even if the agency

---

[11]    I note, however, while Plaintiff argues that a parade of horribles may result if it cannot seek review in the district court, there is no evidence in this case that pipeline construction has begun on any of the properties subject to FERC's condemnation order.  In fact, I am not aware whether Plaintiff's properties have indeed been condemned by PennEast as of this Opinion. Moreover, currently, Plaintiff is challenging FERC's Order at issue in this case in the D.C. Circuit.  As such, Plaintiff may now seek redress for any immediate harm in that forum.

could not adjudicate them in the first instance.  *Thunder Basin*, 510 U.S. at 215; *Elgin*, 567 U.S. at 15-18 ("[W]e conclude that the better interpretation of the [statute] is that its exclusivity does not turn on the constitutional nature of [a] . . . claim, but rather on the type of the . . . action [brought].").  As such, "notwithstanding that a party may be 'attack[ing] the legitimacy of the forum' itself, review is still meaningful, even if it is withheld until first going through an agency that cannot rule on the party's constitutional claims." *Berkley*, 896 F.3d at 630 (citing *Bennett*, 844 F.3d at 184).

To illustrate this point, I turn to the Supreme Court's decision in *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010), a case upon which Plaintiff relies.  *Free Enterprise* held that a provision of the Securities Exchange Act governing challenges to final SEC orders did not strip district courts of jurisdiction to hear a constitutional challenge to the Public Company Accounting Oversight Board (the "Board").  *Id.* at 489.  In that case, plaintiffs were inspected by the Board pursuant to the Sarbanes-Oxley Act of 2002, and plaintiffs brought suit against the Board, alleging that the authority conferred on the Board was unconstitutional.  The government moved to dismiss the case for lack of jurisdiction on the basis that the Securities Exchange Act vested exclusive jurisdiction in the courts of appeals. *Id.* at 489.  In that connection, the government argued that rather than bringing a challenge in federal district court, the petitioners should simply ignore a request by the Board, voluntarily "incur a sanction (such as a sizeable fine)," and then challenge that sanction in the administrative forum. *Id.* at 490. The Supreme Court

rejected that position; rather, in finding district-court jurisdiction, the Court stressed that the plaintiffs were challenging, at the outset, the constitutionality of the Board itself.  In that regard, meaningful judicial review would not be provided if plaintiffs were first required to "bet the farm" by violating a rule to test the Board's legitimacy.  *Id.* at 490-91.

Here, Plaintiff attacks FERC's pattern and practice on Fifth Amendment grounds.  But, Plaintiff need not "bet the farm" to test the constitutionality of FERC's actions.   Its property has already been subjected to the pipeline Certificate issued by FERC, and by bringing constitutional claims to challenge that decision, Plaintiff has an avenue for meaningful judicial review in the appropriate court of appeals.   *Adorers*, 897 F.3d at 195; *Berkley*, 896 F.3d at 631; *see Total Gas & Power N. Am., Inc. v. FERC*, No 16-1250, 2015 U.S. Dist. LEXIS 92036, at *67 (S.D. Tex. Jul. 15, 2016), *aff'd* 859 F.3d 325 (5th Cir. 2017) (finding that the NGA "does not foreclose all judicial review . . ., but merely directs that judicial review shall occur in the United States courts of appeals" (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012)); *Hill*, 825 F.3d at 1248; *Bebo v. SEC*, 799 F.3d 765, 774 (7th Cir. 2015) (observing that the "key factor in *Free Enterprise Fund* that rendered § 78y inadequate is missing" where the plaintiff does not "need to risk incurring a sanction voluntarily just to bring her constitutional challenges before a court of competent jurisdiction").   That, however, does not end the Court's inquiry on this factor.

In addition to the general rule, in determining meaningful judicial review, courts also look to whether the plaintiff suffered "'some additional and irremediable harm beyond the burdens associated with the dispute resolutions process.'" *Berkley*, 896 F.3d at 631 (citing *Bennett*, 844 F.3d at 186 n. 13 (quoting *Tilton v. SEC*, 824 F.3d 276, 286 (2d Cir. 2016)); *see Hill v. SEC*, 825 F.3d 1236, 1247 (11th Cir. 2016) (finding that the statutory review scheme in the Securities Exchange Act of 1934 provides meaningful review of civil enforcement actions brought by the SEC, because the challengers could not show that they "are likely to suffer irreparable injury while awaiting judicial review"); *see, e.g., McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496-97 (1991) (holding that respondents were not "as a practical matter . . . able to obtain meaningful judicial review" when they sought to challenge certain procedures used by the Immigration and Naturalization Service, because raising their claims would have also required them to "voluntarily surrender themselves for deportation"); *Mathews v. Eldridge*, 424 U.S. 319, 331 (1976) (finding that due process was violated where "an erroneous termination" of disability benefits would "damage [the respondent] in a way not recompensable through retroactive payments").

Here, to support the position that it has been denied meaningful review, Plaintiff relies on the Third Circuit decision in *Kreschollek v. S. Stevedoring Co.*, 78 F.3d 868, 873-75 (3d Cir. 1996). In that case, the plaintiff brought a facial constitutional challenge to the review procedures under section 14 the Longshore and Harbor Workers' Compensation Act, while an administrative

proceeding was pending. *Id.* at 870.   Plaintiff argued that he was unconstitutionally deprived of a predeprivation hearing under the Act, before the defendant-employer terminated his benefits. While the Third Circuit found that despite Congress's fairly discernible intent to preclude district-court jurisdiction over ordinary challenges to a worker's compensation decision under the Act, *see id.* at 872-73, nevertheless, the administrative process was insufficient to provide full relief to a person whose benefits had already been terminated.  *Id.* at 874-75.

*Kreschollek*, however, is distinguishable.  In that case, the Third Circuit's determination of a lack of meaningful review turned on the fact that the plaintiff has suffered irremediable harm, *i.e.*, termination of benefits, beyond the burdens associated with the dispute resolution process.  As the *Berkley* Court aptly noted, *Kreschollek* dealt with litigants who had to wait until being heard before the court of appeals when a serious irreparable injury had occurred during the intervening time.  *Berkley*, 896 F.3d at 632.  In the context of the case before me, Plaintiff points to no cogent evidence to corroborate any irreparable injury that it has suffered during the intervening time before appellate review.   While Plaintiff argues that its property is subject to condemnation as a result of FERC's issuance of a Certificate, the plaintiffs' properties in *Adorers* and *Berkley* were similarly being condemned by the private pipeline companies, but the circuit courts did not find that the condemnation itself amounted to irreparable harm. *See Adorers*, 897 F.3d at 195-97; *Berkley*, 896 F.3d at 632 ("Plaintiffs have not adequately produced evidence of irreparable injury, thereby indicating that the

administrative review scheme found in the Natural Gas Act can provide meaningful review for their claims."). Further, perhaps more importantly, Plaintiff does not provide any argument as to why this type of alleged injury is not recompensable if post-deprivation relief is provided by the court of appeals.

As to Plaintiff's argument regarding construction pending rehearing, from Plaintiff's briefing and counsel's arguments, the Court is unaware of specific injuries that Plaintiff has suffered that are irreparable in that regard; in fact, there is no evidence in the record before this Court that construction of any kind has begun on the subject properties. And, significantly, Plaintiff has appealed FERC's Orders to the D.C. Circuit, which court may provide immediate relief if it deems appropriate.

Nonetheless, I recognize the possibility that there might be a situation, albeit not in this case, in which FERC's use of a tolling order may, in effect, deny a plaintiff meaningful judicial review, regardless of whether the NGA could, in theory, provide such recourse. "Undoubtedly in some rare situations, agency inaction may turn the promise of meaningful review into meaningless review." *Berkley*, 896 F.3d at 631 (citing *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 (1986)). But, in this case, Plaintiff has not demonstrated the existence of an irreparable harm. Without any irreparable injury, I cannot distinguish the constitutional claims that Plaintiff has brought here from those claims deemed to be subject to the review provision of the NGA in *Berkley* and *Adorers*.

Finally, as the court in *Dedham* noted, and I concur, even if full review of FERC's action is not available under § 717r pending a reconsideration process,[12] Plaintiff is not without an avenue to immediate relief.  In that situation, under the All Writs Act, Plaintiff may "apply to the Court of Appeals for, and that [c]ourt may grant, ancillary relief in aid of its future jurisdiction."  *Dedham*, 2015 U.S. Dist. LEXIS 91994, at *5; *Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984); *accord Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 538 (1st. Cir. 1997) (explaining that appellant "could have pursued a writ of mandamus from the court of appeals" when faced with "agency inaction").

Accordingly, I find that the first factor, *i.e.*, meaningful judicial review, weighs in favor of finding that this Court lacks jurisdiction over claims brought by Plaintiff.

### 2.    Wholly Collateral

Under the "wholly collateral" standard, claims are not wholly collateral when they are "the vehicle by which [petitioners] seek to reverse" agency action. *Bennett*, 844 F.3d at 186–87; *Jarkesy v. SEC*, 803 F.3d 9, 22–23 (D.C. Cir. 2015); *Tilton*, 824 F.3d at 287–88.  In *Bennett*, Dawn Bennett and her firm, Bennett Group Financial Services, LLC, (collectively, "Bennett") appealed the district court's dismissal on jurisdictional grounds of her suit challenging the constitutionality of the administrative enforcement proceeding that the SEC brought against her. The Fourth Circuit affirmed. *Bennett*, 844 F.3d at 178. The

---

[12]    Again, since a final order in the PennEast project has been issued by FERC, the reconsideration process has been completed.

court reasoned that the plaintiff's constitutional claim would have provided an affirmative defense and, if successful, would have invalidated a Commission order. 844 F.3d at 186–87. Thus, her claim was not wholly collateral. *Id.*

The same was true in *Berkley* where the court found that if plaintiffs were successful on their constitutional claims, the FERC order would be invalidated. *Berkley*, 896 F.3d at 632.   In that regard, the court there concluded that plaintiffs' claims are the "are the means by which they seek to vacate the granting of the Certificate" to the pipeline company, and therefore, their claims are not wholly collateral to the NGA's statutory review scheme.   *Id.* at 632; *Elgin*, 557 U.S. at 7-8, 22 (finding that the plaintiff's constitutional claims were not wholly collateral to the statutory review scheme found in the Civil Service Reform Act of 1978 because the claims comprised the vehicle by which the plaintiff sought to challenge his firing from government employment).

Here, Plaintiff argues that its claims are wholly collateral, because they are broad pattern and practice constitutional challenges. Plaintiff further contends that since section 717r is silent as to constitutional claims, they fall outside the scope of the review provision.  In that connection, Plaintiff cites to the Supreme Court decision in *McNary*, which was decided prior to *Thunder Basin*, and as such, the *McNary* Court did not address the framework at issue here.  While this distinction itself is sufficient to distinguish *McNary* from the present case, *McNary*, on its facts, is also distinguishable.

In *McNary*, the Supreme Court held that a statute prohibiting judicial review of certain immigration status determinations did not preclude district-

court jurisdiction over constitutional challenges to the way those determinations were made. 498 U.S. at 487-88.  The Court's decision in this regard was based on three findings, none of which are present here.  First, the Court concluded that the plaintiffs' claims did not fall within the language of the provision of the statute that was said to preclude district court jurisdiction. *Id.* at 492. Here, however, as various cases, including the Third Circuit, have found, the review scheme of the NGA is sufficiently broad to encompass constitutional claims. Second, the Court emphasized that the plaintiffs' challenge did not go to the merits of their applications for adjustment of status. *Id.* at 495.  Unlike those plaintiffs, Plaintiff's claims asserted here, as discussed, *supra*, if successful, would invalidate the FERC Order related to the PennEast Pipeline project.  Thus, the claims are inextricably interwoven with the merits of FERC's Order.  Finally, the Supreme Court found that, absent jurisdiction in the district court, the plaintiffs would not have been able to obtain any meaningful judicial review.  *Id.* at 496.  But, for the all reasons I have delineated above, Plaintiff may obtain meaningful judicial review in the appropriate court of appeals, an avenue that the Supreme Court found lacking in *McNary.*

Ultimately, Plaintiff cannot escape the effect of its claims on FERC's Certificate issued to PennEast.  Contrary to Plaintiff's position, the focus here is whether the relief Plaintiff seeks would reverse FERC's agency decision, and I have answered that in the affirmative.  This is the appropriate inquiry to determine whether a claim is "wholly collateral" under *Thunder Basin.*  As such, the type of constitutional challenges raised here are not collateral to the statutory

review scheme under the NGA.  In other words, if Plaintiff is successful on its constitutional claims, the FERC order would necessarily be invalidated.  In that respect, Plaintiff's claims are not wholly collateral.  *See Elgin*, 132 S. Ct. at 2139–40 (constitutional claims that are the vehicle by which plaintiffs seek to reverse agency decisions are not wholly collateral); *Hill*, 825 F.3d at 1252 (constitutional claims may be wholly collateral to a statutory requirement of administrative review so long as those claims "are not a vehicle by which they seek to prevail on the merits").

### 3.    FERC's Expertise

Plaintiff argues that FERC's lack of expertise over constitutional questions supports finding district-court jurisdiction over its claims. Plaintiff maintains that FERC has indicated explicitly that review of its orders under 15 U.S.C. § 717r does not extend to determinations of the constitutionality of eminent domain under the NGA, and that such constitutional matters are outside the scope of its review.

Traditionally, adjudicating questions of constitutionality has been found to be outside of the scope of an administrative agency's jurisdiction. *See Califano v. Sanders*, 430 U.S. 99, 109 (1977) ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures . . ."); *Johnson v. Robison*, 415 U.S. 361, 368 (1974) ("[A]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies.").  And, it is not disputed here that FERC does not have the particular type of expertise necessarily to rule on constitutional questions.

However, "[t]his rule is not mandatory." *Bennett*, 844 F.3d at 184 (quoting *Thunder Basin*, 510 U.S. at 215). More recently, the Supreme Court has taken a different approach, and in that regard, has recognized that administrative agencies, such as FERC, may have "expertise [that] could be brought to bear on the . . . questions presented." *Thunder Basin*, 510 U.S. at 212–13.

Indeed, in *Elgin*, the Supreme Court "adopted a broader conception of agency expertise in the jurisdictional context." *Tilton*, 824 F.3d at 289; *see also Hill*, 825 F.3d at 1250–5; *Bebo*, 799 F.3d at 771; *Jarkesy*, 803 F.3d at 28–29. In that case, a federal employee's failure to comply with a federal statute prompted his discharge from government agencies. *See Elgin*, 132 S. Ct. 2130–31. Elgin, an employee, appealed his dismissal to the Merit Systems Protection Board ("MSPB") pursuant to a "comprehensive system" for resolving personnel decisions involving federal employees established by Congress in the Civil Service Reform Act of 1978 ("CSRA"). *Id.* at 2130. That process requires adjudication first before the MSPB, subject to review in the Federal Circuit, which has exclusive jurisdiction over such appeals. *Id.* at 2130-31. Before the administrative process had concluded, however, Elgin joined a suit in federal district court in which petitioners argued that the statutes providing the basis for their discharge were unconstitutional. *Id.* at 2131. The *Elgin* Court held that the CSRA precluded district-court jurisdiction over petitioners' claims. *Id.* at 2130. Relevant here, the Court also held that even though the MSPB could not rule on the constitutionality of the statute, its expertise could "otherwise be brought to bear" on "many threshold questions that may accompany a

constitutional claim." *Id.* at 2140 (quoting *Thunder Basin*, 510 U.S. 214–15). Thus, petitioners could not proceed outside the statutory scheme and had to wait for judicial review in due course.

Here, under *Elgin*, despite lacking expertise to specifically address constitutional questions, FERC may address threshold factual or legal questions that may accompany a constitutional claim. *See id.* at 2140. Even if the agency lacks the expertise to address a constitutional matter, the appropriate court of appeals could still provide meaningful review of FERC's determinations. *Adorers*, 897 F.3d at 195 (holding that "although the constitutional claims may be outside of FERC's expertise, this is tempered by the court of appeals's review, which regularly resolves constitutional issues"); *Massieu v. Reno*, 91 F.3d 416, 420 n.4 (3d Cir. 1996) ("[T]he [*Thunder Basin*] Court's fundamental point, we think, was that both statutory and constitutional claims could be meaningfully addressed in the court of appeals."); *Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin.*, 376 F.3d 239, 240 (4th Cir. 2004) ("[E]ven if the administrative agency elects not to decide the constitutional claims presented[,] . . . this court can do so at the appropriate time."); *Berkley*, 896 F.3d at 633 ("Although perhaps unlikely to occur, FERC had the ability to, upon rehearing Plaintiffs' challenge here—and may still in future cases—revoke its issuance of a Certificate based upon threshold questions within its expertise."); *Del. Riverkeeper Network v. FERC*, 857 F.3d 388, 392 (D.C. Cir. 2017)(finding that FERC has expertise in interpreting the statute it alone administers, and in particular in addressing the "public convenience and necessity standard" at issue in this proceeding).

Accordingly, this final factor also weighs against conferring district-court jurisdiction.

In sum, under the *Thunder Basin* framework, Plaintiff's challenges are subject to the NGA's exclusivity provision. First, Congress's intent to vest jurisdiction in the appropriate court of appeals is "fairly discernible" from the NGA. Turning to the second prong, the NGA's mandated administrative process and judicial review in the appropriate court of appeals constitute meaningful judicial review. Furthermore, a weighing of the remaining factors compels a finding that Plaintiff's claims are subject to the NGA's exclusivity provision: that is, Plaintiff's claims are not wholly collateral, and lastly, under *Elgin* and its progeny, FERC has the necessary wherewithal to address matters that may impact Plaintiff's constitutional challenges in the first instance.

Accordingly, I find that under *Thunder Basin* framework, Congress intended to divest district courts of jurisdiction to hear the type of constitutional claims brought by Plaintiff here; in that regard, Plaintiff must avail itself of the statutory review scheme established by the NGA, because this Court lacks subject matter jurisdiction over Plaintiff's claims.

Defendants' motion to dismiss is **GRANTED**.


**DATED**: October 29, 2018                                /s/ Freda L. Wolfson
                                                           Hon. Freda L. Wolfson
                                                           U.S. District Judge